**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Microsoft Corporation,

    Plaintiff,

    v.                                            Case No. 1:06cv611

Mark McGee,                                 Judge Michael R. Barrett

    Defendant.

## ORDER

This matter is before the Court upon Plaintiff Microsoft Corporation's Motion for Default Judgment (Doc. 10).  Defendant Mark McGee has not filed a Response.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Microsoft develops, markets, distributes and licenses computer software. (Doc. 1, ¶ 7)  One such program is Office 2000 Professional ("Office 2000 Pro"), which is a suite of popular Microsoft software programs including Access 2000, Excel 2000, Outlook 2000, PowerPoint 2000, Word 2000, and Publisher 2000.  Microsoft holds valid copyrights for all of these programs (including user's reference manuals, user's guides, and screen displays).  (Id., ¶ 8) Office 2000 Pro also bears a number of trademarks that Microsoft has registered with the United States Patent and Trademark Office.  (Id., ¶ 9)

Defendant is an individual doing business as Computerme.net in Hamilton, Ohio and on the Internet. (Complaint ¶ 2) Defendant owns, operates, does business as or otherwise controls Computerme.net.  (Id., ¶ 3)  Defendant advertises, markets, installs, and distributes computer hardware and software, including programs covered by Microsoft's

registered copyrights and bearing Microsoft's registered trademarks or imitations thereof. (Id., ¶¶ 2, 3, 10) By letters dated March 18, 2005 and November 21, 2005, Microsoft warned Defendant that he may be distributing illegal Microsoft software. (Id., ¶ 11, Exs. 1, 2) Defendant did not respond to Microsoft's warnings.

In August of 2006, Defendant distributed to an investigator counterfeit and infringing Office 2000 Pro software. (Id., ¶ 13) This willful infringement was not an isolated incident, but rather is part of a continuous and ongoing business practice of Defendant in blatant violation of Microsoft's copyrights and trademarks. (Id., ¶¶ 14-19)

In its Complaint, Microsoft brings claims for trademark infringement in violation of 15 U.S.C. 1114; false designation of origin, false or misleading description, and false or misleading representation that the imitation visual images originate from or are authorized by Microsoft in violation of 15 U.S.C. 1125(a); violation of Ohio's Deceptive Trade Practices Act, Ohio Rev. Code 4165.01; and unfair competition under Ohio law.

On September 15, 2006, Microsoft personally served its Complaint on Defendant (Doc. 6) Defendant failed to timely respond. On December 26, 2006, the Clerk of Court entered default against Defendant. (Doc. 9) Microsoft requests that this Court enter a default judgment against Defendant; award Microsoft statutory damages in an amount of $710,000; award Microsoft attorneys fees, paralegal fees and costs of $3,569.50; and issue a permanent injunction against Defendant to prevent future infringement.

## II. ANALYSIS

### A. Default Judgment

Federal Rule of Civil Procedure 55(b)(2) governs the entry of a default judgment by the court. The Rule provides, in pertinent part:

> [T]he party entitled to judgment by default shall apply to the court therefore; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. . . . If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper.

Fed.R.Civ.P. 55(b)(2). Once a default is entered against a defendant, that party is deemed to have admitted all of the well pleaded allegations in the complaint, except those relating to damages. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995). Microsoft is seeking statutory damages under the Copyright Act and the Lanham Act.

### B. Copyright Act

The Copyright Act gives the copyright owner the exclusive right to reproduce a copyrighted work and to distribute copies of the work. *See* 17 U.S.C. § 106(1)-(3). In a copyright action, "to establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).

The registration certificates, which are attached to the Complaint, are *prima facie* evidence of Microsoft's ownership of valid copyrights. *Cannon Group, Inc. v. Better Bags, Inc.*, 250 F.Supp.2d 893, 898 (S.D.Ohio 2003), *citing* 17 U.S.C. § 410(c); *see also Tennessee Walking Horse Breeders' and Exhibitors' Ass'n v. National Walking Horse Ass'n*, 2007 WL 325774, *5 (M.D.Tenn. January 31, 2007) (slip op.). Therefore, Microsoft has proven ownership of the following valid copyrights: TX 4-905-936 ("Office 2000 Professional"), TX 4-905-950 ("Access 2000"), TX 4-905-949 ("Excel 2000"), TX 4-906-019 ("Outlook 2000"), TX 4-905-952 ("PowerPoint 2000"), TX 4-905-937 ("Publisher 2000"), and

TX 4-905-951 ("Word 2000").  (Doc. 1, Ex. 1-7)  Therefore, Microsoft has established the first element of infringement.

Microsoft alleges that Defendant has copied these copyrighted materials and distributed the infringing materials in the United States without approval or authorization from Microsoft.  (Id., ¶¶ 15, 21)  Because the Court must deem these allegations as being admitted, Microsoft has established the second element of copyright infringement.  Accordingly, the Court finds that Defendant infringed the above-listed copyrights in violation of the Copyright Act.

> **C.** **Lanham Act**

Microsoft brings two claims under the Lanham Act.  The first claim is for trademark infringement under the Act, which provides:

> (1) Any person who shall, without the consent of the registrant--
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.  Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1).  Microsoft's second claim is for false designation of origin, false or

misleading description, and false or misleading representation under 15 U.S.C. § 1125(a), which provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). The Sixth Circuit uses the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks. *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006), *citing Two Pesos v. Taco Cabana*, 505 U.S. 763, 780 (1992).

In the Complaint, Microsoft alleges that the infringing materials that Defendant has and continues to use, offer, advertise, market or distribute are likely to cause confusion, mistake or deception as to their source, origin or authenticity. (Doc. 1, ¶ 31) Microsoft also alleges that Defendant has used Microsoft's marks, name, and/or visual designs, including displays, logos, icons, graphic designs, and/or packaging virtually indistinguishable from Microsoft's. (Id., ¶ 43) Microsoft alleges that Defendant has done so to mislead, deceive, or confuse customers and the public as to the origin and authenticity of the goods and services offered. (Id., ¶ 44) Deeming these allegations as admitted, the Court finds that

Microsoft has established that Defendant infringed the following trademarks: 1,200,236 ("MICROSOFT"), 1,256,083 ("MICROSOFT"), 1,475,795 ("POWERPOINT"), 1,741,086 ("MICROSOFT ACCESS"), 1,982,562 ("PUZZLE PIECE LOGO"); and 2,188,125 ("OUTLOOK"). The Court also finds that Defendant's acts constituted false designation of origin, false or misleading description, and false or misleading representation in violation of the Lanham Act.

### D. Willfulness

Microsoft maintains that Defendant willfully infringed Microsoft's copyrights and trademarks.

Under the Copyright Act, willful infringement means conduct that the defendant knows constitutes copyright infringement. *King Records, Inc. v. Bennett*, 438 F.Supp.2d 812, 852 (M.D.Tenn. 2006) "[O]ne who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes. But one who 'recklessly disregards' a copyright holder's rights, even if lacking actual knowledge of infringement, may be subject to enhanced damages." *Id.*, *citing* 4 Nimmer on Copyright, § 14.04[B][3][a], at 14-78-14-79, *quoted in Princeton Univ. Press v. Mich. Document Servs., Inc.*, 99 F.3d 1381, 1392 (6th Cir. 1996). Where the defendant has defaulted, willful copyright infringement is proven. *Capitol Records, Inc. v. Zahn*, 2007 WL 542816, *3 (M.D.Tenn. Feb. 16, 2007) (slip op.), *citing Peer Intern. Corp. v. Max Music & Entertainment, Inc.*, 2004 WL 1542253 (S.D.N.Y. 2004).

Under the Lanham Act, infringement is willful, and thus triggers the enhanced statutory damages limit, if the defendant "had knowledge that its actions constitute an infringement." *Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 852 (E.D.Mich. 2006), *quoting*

*N.A.S. Import, Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2nd Cir. 1992). A defendant's continued infringement after notice of his wrongdoing is probative evidence of willfulness. *Id.*, *citing Int'l Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 380-81 (7th Cir. 1988) (willfulness may be demonstrated where infringer is provided notice of its infringing conduct). In addition, a court may infer willfulness from defendant's default. *Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F.Supp.2d 1310. 1313 (S.D.Fla. 2003) (finding willfulness when "Plaintiffs repeatedly contacted Defendants regarding their infringing conduct and Defendants ignored Plaintiff's communications"); *Louis Vuitton Malletier & Oakley v. Veit*, 211 F.Supp.2d 567, 583 (E.D.Pa. 2002) ("Willfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice.").

Microsoft has submitted evidence that it has sent letters to Defendant explaining that his activities were unlawful. Nevertheless, Defendant continued to distribute infringing software, knowing such acts were unlawful. Therefore, the Court finds that Defendant's violations of the Copyright and Lanham Acts were willful.

**E.     Ohio Law**

The analysis of an unfair competition claim under Ohio law is the same as that for a claim under the Lanham Act. *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003) ("Because trademark claims under Ohio law follow the same analysis as those under the Lanham Act, our discussion of the federal trademark claims will therefore encompass the state trademark claims as well"); *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 626 n.2 (6th Cir. 2002) ("Both Ohio and federal courts have recognized that the same analysis applies to claims under Ohio's statutory and common

law of unfair competition and the Lanham Act"); *Victoria's Secret Stores v. Artco Equip. Co.*, 194 F. Supp. 2d 704, 724 n.8 (S.D. Ohio 2002) ("The Court notes the same analysis applies to [federal] trademark infringement, unfair competition, Ohio common law, and Ohio's deceptive trade practices statutes").  Accordingly, the Court finds that Defendant's acts constituted unfair competition under Ohio common law.

### F. Statutory Damages

A successful plaintiff is entitled to recover a separate award of statutory damages under both the Copyright Act and the Lanham Act when a defendant has infringed both its trademarks and copyrights, even when by a single act. *Microsoft Corp. v. Tierra Computer, Inc.*, 184 F.Supp.2d 1329, 1331 (N.D.Ga. 2001) (awarding recovery of statutory damages under both Copyright Act and Lanham Act for one act of unlawful software distribution that constituted two wrongs); *Microsoft Corp. v. Compusource Distributors, Inc.*, 115 F.Supp.2d 800, 811 (E.D.Mich. 2000).

A copyright owner may elect to recover an award of statutory damages in lieu of actual damages and profits at any time before final judgment is rendered. 17 U.S.C. § 504(c)(1).[1]  The Copyright Act permits a minimum award of $750 and a maximum award

---

[1]The Copyright Act provides:

> [E]xcept as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which two or more infringers are liable jointly and severally, in a sum not less than $750 or more than $30,000 as the court considers just.  For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

17 U.S.C. § 504(c).

of $30,000 for each copyrighted work infringed. *Id.* "District courts have wide discretion in setting damages within the statutory range set forth in § 504(c)(1)." *Disney Enters., Inc. v. Farmer*, 427 F.Supp.2d 807, 816 (E.D.Tenn. 2006). If the plaintiff proves that the infringement was willful, statutory damages may be awarded up to $150,000 per copyrighted work infringed. 17 U.S.C. § 504(c)(2).

The Lanham Act provides for statutory damages in cases involving the use of a counterfeit mark. 15 U.S.C. § 1117(c).[2] A "counterfeit mark," for purposes of awarding statutory damages is defined as "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered . . . ." 15 U.S.C. § 1116(d)(1)(B).

Microsoft requests only the maximum amount of statutory damages available for non-willful trademark infringement and copyright infringement. Specifically, Microsoft seeks statutory damages of $100,000 for each of five trademarks at issue and $30,000 for

---

[2]Under this section the Lanham Act provides:

In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--

(1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).

its seven copyrights at issue, for a total of $710,000.

Several courts have found statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F.Supp.2d 1213, 1220 (S.D.Fla. 2004), *citing Sara Lee Corp. v. Bags of New York, Inc.*, 36 F.Supp.2d 161, 165 (S.D.N.Y.1999); *Tiffany Inc. v. Luban*, 282 F.Supp.2d 123, 123 (S.D.N.Y. 2003); *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494 (C.D.Cal. 2003). Moreover, the Court finds that the amount of statutory damages being sought by Microsoft is reasonable. As such, the Court concludes that Microsoft is entitled to an award of $710,000 in statutory damages.

### G. Injunctive relief

Both the Copyright Act and the Lanham Act provide for injunctive relief. 17 U.S.C. § 502(a); 15 U.S.C. §§ 1116(a) and 1125(c)(2). A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. *eBay, Inc. v. MercExchange, LLC*, 126 S.Ct. 1837, 1840 (2006) (explaining that the Supreme Court has "consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed."); *see also Audi*, 469 F.3d at 550 (applying *ebay* in trademark case). Accordingly, a plaintiff seeking a permanent injunction must demonstrate (1) that it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) it is in the public's interest to issue the injunction. *Audi*, 469 F.3d at 550.

With regard to the first factor, "copyright infringement is presumed to give rise to irreparable injury." *Capitol Records, Inc. v. Zahn*, 2007 WL 542816, *4 (M.D.Tenn. Feb. 16, 2007) (slip op.), *quoting Universal City Studios v. Reimerdes*, 82 F.Supp.2d 211, 215 (S.D.N.Y. 2000). Likewise, Sixth Circuit caselaw holds that no particular finding of likelihood of entry or irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases. *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999), *citing Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991). The Sixth Circuit has stated that irreparable injury "ordinarily follows when a likelihood of confusion or possible risk to reputation appears" from infringement or unfair competition. *Id.* Since the Court has found that Microsoft has established a likelihood of confusion, the Court necessarily finds that Microsoft has shown irreparable injury based upon its trademark claims.

With regard to the second factor, the Sixth Circuit has explained that where there is potential for future harm from infringement, there is no adequate remedy at law. *Audi*, 469 F.3d at 550. Here, there is potential for future harm from infringement because Defendant has continued its infringing activities after notice from Microsoft and the filing of this lawsuit. Moreover, because of Defendant's use of a website to carry out its infringing activities, the potential harm is widespread.

With regard to the balance of hardships, the Court finds a permanent injunction is warranted because there is no harm to the Defendant inasmuch as an injunction will merely require Defendant to comply with the Copyright Act and Lanham Act. *Accord Capitol Records*, 2007 WL 542816 at *4; *Audi*, 469 F.3d at 550. In contrast, Microsoft faces hardship from loss of sales. *See Audi*, 469 F.3d at 550.

Finally, it is in the public's interest to issue a permanent injunction. "Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983). In addition, the Court finds that enjoining Defendant's use of Microsoft's trademarks would advance two fundamental purposes of trademark law: preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark. *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006). In summary, the Court finds that Microsoft is entitled to a permanent injunction.

### F. Attorney Fees and Costs

The Copyright Act provides that a district court "may, in its discretion, award costs, including reasonable attorney fees, to the prevailing party in a civil suit." *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 807 (6th Cir. 2005) (citing 17 U.S.C. § 505). The Lanham Act authorizes an award of "reasonable attorney fees to the prevailing party" in exceptional cases. 15 U.S.C. § 1117(a). Such an award is available in trademark infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate or willful. *Ford Motor Co.*, 441 F.Supp.2d at 854, *citing Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002); *see also Disney Enterprises*, 427 F.Supp.2d at 818 (awarding fees and costs where copyright infringement was willful and intentional based on entry of default).

The Court finds that Microsoft is the prevailing party in this action. As stated above, the Court has found that Defendant's acts of infringement were willful. Therefore, the Court concludes that Microsoft is entitled to reasonable attorney fees and costs. Microsoft has provided an itemized list of attorney fees and costs incurred in this matter. (Doc. 10, Chudakoff Decl.) Because the Court finds these attorney fees and costs reasonable, an award of the same shall be made.

### III. CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Plaintiff Microsoft Motion and Application for Entry of Default Judgment and Permanent Injunction (Doc. 10). It is hereby **ORDERED** that:

1. Judgment be entered in favor of Plaintiff Microsoft Corporation and against Defendant for a total of $713,569.50, which is calculated as follows:

    a. Statutory Damages $710,000.00

    b. Attorneys Fees $2,705.00

    c. Paralegal Fees $514.50

    d. Costs $350.00

2. Defendant Mark McGee, an individual, d/b/a COMPUTERME.NET, his directors, principals, officers, members, agents, servants, employees, representatives, successors and assigns, and all those acting in concert or participation with him shall be, and hereby are, PERMANENTLY ENJOINED and restrained from:

    a. imitating, copying, or making any other infringing use or infringing distribution of software programs, components, certificates of authenticity ("COA") end user license agreements ("EULA") or items protected by Microsoft's registered trademarks and service mark, including, but not limited to, the following Trademark and/or Service Mark Registration Numbers:

    (1) 1,200,236 ("MICROSOFT");

       (2) 1,256,083 ("MICROSOFT");
       (3) 1,475,795 ("POWERPOINT");
       (4) 1,741,086 ("MICROSOFT ACCESS");
       (5) 1,982,562 ("PUZZLE PIECE LOGO"); and
       (6) 2,188,125 ("OUTLOOK")

or software programs, components, COA, EULA, items or things protected by the following Certificate of Copyright Registration Nos.:

       (1) TX 4-905-936 ("Office 2000 Professional");
       (2) TX 4-905-950 ("Access 2000");
       (3) TX 4-905-949 ("Excel 2000");
       (4) TX 4-906-019 ("Outlook 2000");
       (5) TX 4-905-952 ("PowerPoint 2000");
       (6) TX 4-905-937 ("Publisher 2000"); and
       (7) TX 4-905-951 ("Word 2000")

or any other works now or hereafter protected by any of Microsoft's trademarks or copyrights;

b.   manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any software program, component, COA, EULA, item or thing bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Microsoft's registered trademarks or service mark, including, but not limited to, the Trademark and Service Mark Registration Nos. listed in Paragraph (a) above;

c.   using any simulation, reproduction, counterfeit, copy, or colorable imitation of Microsoft 's registered trademarks or service mark including, but not limited to, the Trademark and Service Mark Registration Nos. listed in Paragraph (a) above, in connection with the manufacture, distribution, offering for distribution, sale, offering for sale, advertisement, promotion, or display of any software, component, COA, EULA, item or thing not authorized or licensed by Microsoft;

d.   using any false designation of origin or false description which can or is likely to lead the trade or public or individuals erroneously to believe that any software, component, COA, EULA, item, or thing that has been manufactured, produced, distributed, offered for distribution, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for Microsoft, when such is not true in fact;

  e. using the names, logos, or other variations thereof of any of Microsoft's copyright and/or trademark-protected software programs in any of Defendant's trade or corporate names;

  f. engaging in any other activity constituting an illegal distribution of any Microsoft software, component, COA, EULA, item, or thing and/or infringement of any of Microsoft's trademarks, service mark and/or copyrights, or of Microsoft's rights in, or right to use or to exploit these trademarks, service mark, and/or copyrights; and

  g. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs (a) through (f) above.

3. This matter shall be **CLOSED** and **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

            */s/ Michael R. Barrett*
            Michael R. Barrett, Judge
            United States District Court